UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME HEALTHCARE SERVICES – SHASTA LLC,<br><br>Plaintiff,<br><br>v.<br><br>TOM PRICE, Secretary of the Department of Health and Human Services,<br><br>Defendant. | No. 2:17-cv-00071-TLN-KJN<br><br>**ORDER** |

This matter is before the Court pursuant to Defendant Tom Price's ("Defendant" or the "Secretary") Motion for Stay of Proceedings. (ECF No. 10.) Plaintiff Prime Healthcare Services – Shasta LLC ("Plaintiff") opposes the motion.[1] (ECF No. 13.) Defendant filed a reply. (ECF No. 14.) The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, Defendant's motion is DENIED.

**I.    INTRODUCTION AND BACKGROUND**

Defendant moves this Court to stay the instant action because there are "two previously filed federal actions that likely will have direct and substantial (if not dispositive) effects on these

---

[1] Additionally, Plaintiff has filed a "Motion for Judicial Notice in Support of [Plaintiff's] Opposition to Government's Motion to Stay." (ECF No. 16.) The Court found it unnecessary to consider the items Plaintiff requested the Court judicially notice in order to resolve the instant motion. Therefore, this request is hereby DENIED as moot.

1

proceedings." (ECF No. 10-1 at 2.) The first action is *United States ex. rel. Bernsten v. Prime Healthcare Services*, C.D. Cal. Case No. 11-8214 (the "FCA Action"). The second action is *Alvarado Hospital, LLC v. Price*, C.D. Cal. Case No. 15-6312 (the "Settlement Action").

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Defendant has not done so here. This is in part due to the quality of briefing. Nowhere in Defendant's opening brief does he address what Plaintiff will need to demonstrate to show it is entitled to relief in the instant action or the standard of review that applies to a final agency decision of the sort at issue in this case. The brief discussion of these topics in his reply brief was not particularly illuminating. These deficiencies were compounded by his sparse and, frankly, imprecise discussion of the FCA Action. While Defendant has submitted a copy of the Government's complaint in that action, this misses the point. The Court is not a litigant in the instant action. It is not the role of the Court to develop arguments for litigants or parse pleadings for actions not before this Court — with which it cannot be presumed to have any familiarity — to see whether they support a litigant's underdeveloped arguments. *See Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001).

In any event, the Court will analyze this motion on the merits because stays of the sort sought here are discretionary and, where appropriately granted, serve to promote judicial economy and preserve judicial resources. *See Landis*, 299 U.S. at 254–55. To do this in an orderly way, the Court will first set out the legal standard for granting a motion to stay. This will be followed by a brief discussion of the nature of the instant action and the related standard of review. Finally, the Court will summarize the status and nature of the FCA Action and the Settlement Action before analyzing the instant motion.

II. **STANDARD OF LAW**

The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. "The proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708. A district court's decision to grant or deny a

2

stay is a matter of discretion. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). This rule "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id*. at 863–64. Nonetheless, "[w]here it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*. (citing *Landis*, 299 U.S. at 254–55).

Additionally, in determining whether a stay is appropriate, a district court should be mindful that the length of the proposed stay is reasonable in relation to the justification given for it. *See Landis*, 299 U.S. at 256–57; *see also Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) ("If a stay is especially long or its term is indefinite, we require a greater showing to justify it."). There is a general policy "favoring stays of short, or at least reasonable, duration." *Dependable Highway Exp., Inc.*, 498 F.3d at 1067. "Generally, stays should not be indefinite in nature." *Id*. at 1066. "[A] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time." *Id*. (quoting *Leyva*, 593 F.2d at 864).

III. **NATURE OF INSTANT ACTION**

A brief explanation of Medicare's system of payments and administrative appeals is necessary to understanding the nature of this action and putting the instant motion in proper context. The Ninth Circuit has provided precisely this:

> The Secretary of Health and Human Services . . . administers the Medicare program through the Centers for Medicare and Medicaid Services ("CMS"). . . . Medicare is a federally funded health insurance program for aged and disabled persons. 42 U.S.C. § 1395 *et seq*. . . . Through CMS, the Secretary contracts with fiscal

3

> intermediaries, generally private insurance companies, to perform coverage determination and payment functions. *Id*. §§ 1395h, 1395kk–1; *Erringer v. Thompson*, 371 F.3d 625, 627 (9th Cir. 2004).
>
> Medicare coverage is limited to services that are medically "reasonable and necessary." 42 U.S.C. § 1395y(a)(1)(A). . . . [F]iscal intermediaries make "initial determinations" of coverage and amount. *Id*. § 1395ff(a)[.]

*Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1153–55 (9th Cir. 2012). A determination of overpayment may be appealed through a four-tier administrative appeals process. *See id*. at 1155. The third-tier is a determination by an administrative law judge ("ALJ"). *See id*. This decision can be appealed to the Medicare Appeals Council ("MAC") — the fourth tier. *Id*. "The MAC's decision is the final decision of the Secretary[.]" *Id*.

The Medicare Act provides for judicial review of a final decision made by the Secretary regarding amounts paid under Medicare. *See* 42 U.S.C. § 1395ff(b). This judicial review is available as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1395ff(b)(1)(A); *Heckler v. Ringer*, 466 U.S. 602, 605 (1984). The reviewing court may affirm, modify or reverse the final decision of the Secretary. *See* 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395ff(b)). However, the Secretary's decision will be disturbed only if it is not supported by substantial evidence on the record as a whole or if it is based on legal error. *See Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence is defined as more than a mere scintilla but less than a preponderance." *Id*. at 1098 (internal quotation marks omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Id*.

Here, Plaintiff, who owns and operates an acute care, medical, and surgical facility, seeks judicial review of a final determination by Defendant arising out of Plaintiff's treatment of a Medicare beneficiary. (Compl., ECF No. 1 at ¶¶ 1, 14, 25.) On August 25, 2014, an administrative law judge issued a "negative decision" when Plaintiff challenged the determination that it had received an overpayment of $14,049.07 in connection with that treatment. (*See* ECF No. 1 at ¶¶ 20–23; ECF No. 14 at 1.) Plaintiff appealed this denial to the MAC on October 21, 2014. (ECF No. 1 at ¶ 23.) On January 6, 2017, the MAC confirmed that it could not issue a ruling in the statutorily provided timeframe. (ECF No. 1 at ¶ 24.) Plaintiff contends this

4

constitutes exhaustion of its administrative remedies and the ALJ's determination constitutes a final agency decision. (ECF No. 1 at ¶ 25.) Plaintiff filed this action seeking judicial review of that decision. (ECF No. 1 at ¶ 25.)

**IV.  NATURE OF PENDING ACTIONS**

    A.    <u>The FCA Action</u>

In the FCA Action, the United States, on behalf of the United States Department of Health and Human Services, alleges as follows: Prem Reddy, M.D., is the founder, Chairman, President, and Chief Executive Officer of Prime Healthcare Services, Inc. ("Prime"). (ECF No. 10-3 at ¶ 2.) Prime's business model is to buy distressed hospitals and make them profitable. (ECF No. 10-3 at ¶ 3.) Prime or its affiliate, the Prime Healthcare Foundation, own or operate certain hospitals in California through wholly-owned subsidiaries. (ECF No. 10-3 at ¶¶ 2, 20.) Fourteen of those hospitals (the "Prime Hospitals") were the subject of the FCA Action. (ECF No. 10-3 at ¶¶ 2, 20.) Plaintiff operated one of the Prime Hospitals and was itself a defendant. (*See* ECF No. 10-3 at ¶ 20.) Defendant indicates that the FCA Action is currently scheduled for trial in November 2018. (ECF No. 10-1 at 3.)

The United States alleges that Prime, Reddy and the Prime Hospitals "engaged in a scheme to defraud Medicare by submitting false claims for unnecessary inpatient services in violation of the False Claims Act[.]" (ECF No. 10-1 at 2.) This was allegedly done by "developing and implementing a business model premised on policies and practices designed to increase inpatient admissions of Medicare beneficiaries to [Prime Hospitals] without regard to medical need."[2] (ECF No. 10-3 at ¶ 48.) The United States alleges these policies and practices included: (i) "setting aggressive quotas to pressure [emergency department] physicians to admit more patients," (ii) "criticizing and penalizing [emergency department] physicians who did not fall in line with the Prime business model," and (iii) "misrepresenting Prime's admission criteria forms as industry-accepted Milliman Care Guidelines." (ECF No. 10-3 at ¶ 48.) The United States further alleges Prime adopted an "aggressive strategy" of appealing all claim

---

[2] The FCA Action complaint indicates that Medicare reimburses at a substantially higher rate for the same treatment when the beneficiary is admitted for inpatient care. (ECF No. 10-3 at ¶ 8.)

reimbursement denials of inpatient hospital services for Medicare beneficiaries and that Reddy coached physicians to embellish patient medical records with an eye toward persuading ALJs who would decide the appeals of any claims that were denied. (ECF No. 10-3 at ¶¶ 121–24.) The United States alleges the policies put in place "led to the submission of false or fraudulent claims for inpatient medical services." (ECF No. 10-3 at ¶ 48.)

Defendant's briefs do not make clear the scope or number of claims subject to the FCA Action. However, the FCA Action complaint indicates that the "systematic practice of maximizing revenues" ran from "2006 through September 30, 2013." (ECF No. 10-3 at ¶ 4.) Similarly, the Defendant's briefs do not indicate what percentage of the claims submitted by Prime Hospitals during that time period the United States believes were not medically "reasonable and necessary." *See* 42 U.S.C. § 1395y(a)(1)(A). However, Defendant asserts that the United States plans to introduce expert testimony based on a "statistical analysis of a random sample of Prime's claims for reimbursement for inpatient services." (ECF No. 10-1 at 3.) Defendant indicates that the sampled claims were selected from claims meeting the following criteria: (i) "the patient was admitted as an inpatient between January 1, 2006, and September 30, 2013;" (ii) "the patient was discharged within two days;" and (iii) "the patient had one of a select number of diagnoses at a high risk for abuse by providers making fraudulent claims for inpatient services." (ECF No. 10-1 at 4.) However, Defendant's briefs do not disclose the results (or anticipated results) of the analysis of the sampled claims.

### B. The Settlement Action

In the Settlement Action, Plaintiff and certain of its affiliates allege in relevant part that the Centers for Medicare and Medicaid Services ("CMS") is in breach of "its October 31, 2014 agreements to settle the Prime Hospitals' administrative appeals of inpatient claim denials for a partial 68% payment of the $34 million owed [them] in exchange for their dismissal of such appeals[.]" (ECF No. 10-4 at ¶ 1.) Defendant acknowledges that CMS announced a willingness to settle certain pending administrative claims and circulated the terms of a proposed settlement agreement because the "Medicare program was experiencing a severe backlog in administrative appeals." (ECF No. 10-1 at 4.) Defendant further acknowledges Plaintiff sought to enter into a

settlement agreement. (ECF No. 10-1 at 4.) However, Defendant asserts that CMS "refused in light of the ongoing fraud investigation." (ECF No. 10-1 at 4.) Defendant characterizes the Settlement Action as arguing "the unsigned settlement agreement was enforceable, and CMS was required to pay the disputed claims per the terms of the agreement." (ECF No. 10-1 at 4.) The Settlement Action was transferred from the United States District Court for the Central District of California to the United States Court of Federal Claims. (ECF No. 10-1 at 4.) The plaintiffs in the Settlement Action appealed the transfer order. (ECF No. 10-1 at 4.) The United States Court of Appeals for the Federal Circuit took the appeal under submission after oral argument on December 7, 2016. (ECF No. 10-1 at 4.)

V. **ANALYSIS**

Defendant has not persuaded the Court that it should exercise its discretion to stay the instant action pending the resolution of the FCA Action and Settlement Action. The Court will analyze the competing interests that Defendant contends support a stay before examining whether the length of the proposed stay is reasonable in relation to the justification given for it.

A. Judicial Economy

Defendant has offered three arguments in support of the proposition that a stay will settle or simplify the factual and legal questions presented by the instant action or otherwise will promote judicial economy. The Court finds none of them persuasive.

First, Defendant argues that "[a]llowing this case to proceed . . . presents the risk of different courts issuing conflicting decisions regarding whether Prime's inpatient reimbursement-claims are supported by medical necessity" because "the reimbursement claim [at issue in the instant action] falls within the parameters of the sample analyzed" in the FCA Action. (ECF No. 10-1 at 5.) The Court did not find this argument persuasive for several reasons. Defendant does not represent that the reimbursement claim at issue in the instant action will *actually* be analyzed as part of the sample. Moreover, as previously noted, Defendant has not articulated intelligibly what this statistical analysis will show. Even assuming that analysis shows that a statistically significant portion of the analyzed claims were embellished, it would not necessarily show that the claim subject to this action *actually* has been. Perhaps more importantly, judicial review of

7

the Secretary's final decision is not plenary. *See* 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395ff(b)). In relevant part, § 405(g) provides that "[t]he court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision . . . ." *Id*. (emphasis added). This decision will be disturbed *only* if it is not supported by substantial evidence on the record as a whole or if it is based on legal error. *See Tackett*, 180 F.3d at 1097. Defendant has not made an effort to show its statistical evidence, however strong, could be properly considered by the Court in the instant action. Nor has Defendant explained why this statistical evidence would provide a basis for disturbing the ALJ's determination. Rather, Defense Counsel has represented that the ALJ's decision *upheld* "the *denial* of a Medicare reimbursement claim . . . for inpatient services . . . . based on a *finding that inpatient services were not reasonable and necessary*." (ECF No. 10-2 at ¶ 7 (emphasis added).) Indeed, Defendant observes in his reply that "[t]his case *must* be decided on the administrative record[.]" (ECF No. 14 at 3 (emphasis added).)

Further, as Plaintiff suggests in its opposition, Defendant has made no effort to show that the Government would be unable to obtain appropriate relief in the FCA Action if the instant action concluded during the pendency of the FCA Action. (*See* ECF No. 13 at 17–18.) If a fraudster is shrewd enough to bamboozle an ALJ in the course of submitting a false claim, does this bar the Government from obtaining relief under the False Claims Act? Put another way: does a shrewd fraudster any less submit a false claim for reimbursement because he is able to dupe the persons tasked with overseeing whether reimbursement is appropriate for the submitted claim? Defendant leaves the Court to wonder.

Second, Defendant argues that "even if a disputed reimbursement claim does not fall within the precise parameters sampled [for the FCA Action] . . . the claim may well be tainted by the same fraudulent scheme" and, further, that the "doctrine of unclean hands" may be implicated if Plaintiff seeks to rely on tainted evidence. (ECF No. 10-1 at 6.) Plaintiff is seeking judicial review of final decision of the Secretary relating to Medicare reimbursement. Defendant has cited no authority for the proposition that the unclean hands doctrine is applicable to such an action, and the Court has found none. As the authorities cited by Defendant make clear, this

doctrine "derives from the equitable maxim that 'he who comes into equity must come with clean hands.'" *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985). This maxim "*closes the doors of a court of equity* to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Id.* (emphasis added) (quoting *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945)). Defendant has neither identified any equitable relief sought by Plaintiff nor otherwise sought to explain why this doctrine could be appropriately applied by this Court. Once Defendant's unclean hands argument is put aside, this second argument is a less persuasive version of the first and fares no better.

Third, Defendant argues if he loses the Settlement Action "reimbursement claims that fall within the parameters of the settlement agreement would be resolved pursuant to the agreement's terms" and therefore a stay of this action pending the result would "avoid the unnecessary expenditure of time and resources[.]" (ECF No. 10-1 at 7.) Or, it may delay resolution of the instant action without narrowing the factual or legal questions that would need to be resolved if that action were litigated to judgment. Settlement of a civil action obviates the need to answer these questions at all rather than simplifying them. Thus, whether this supports a stay turns on whether the stay will exceed a reasonable time in relation to the justification for it, including whether or not refusal to stay the instant action pending the resolution of the Settlement Action would be inequitable to Defendant. The Court will discuss these below.

B. Possible Damage Resulting from a Stay

Plaintiff argues that it will suffer two harms from a stay: (i) a delay in obtaining the monetary relief Plaintiff seeks, and (ii) "a delay in obtaining potentially favorable judicial decisions regarding the medical necessity of their inpatient admissions that would support their defense in the FCA Action." (ECF No. 13 at 15.) With respect to this first harm, Defendant correctly observes, the Ninth Circuit has found that where a stay pending the resolution of another proceeding is otherwise justified, a delay in obtaining monetary damages is not itself a sufficiently significant harm to require the request for a stay to be denied. *See CMAX, Inc.*, 300 F.2d at 268–69.

1   Plaintiff's discussion of its second harm was not compelling.  Indeed, it bordered on
2   incoherent at times.  Plaintiff indicates that it "detailed above" that successful administrative
3   appeals by it and other Prime affiliates are an "important and critical part of its defense to the
4   FCA Action."  (ECF No. 13 at 16.)  It had not.  Rather, Plaintiff had simply previously asserted
5   this in several instances without explaining why it was so.  (ECF No. 13 at 5, 9, 15.)  Later,
6   Plaintiff asserts that obtaining favorable rulings "regarding Medicare coverage of Prime's
7   inpatient claims" would "[o]bviously" support its defense in the FCA Action.  (ECF No. 13 at
8   17.)  Plaintiff and its affiliates are alleged to have systematically engaged in a fraudulent scheme
9   of passing off inpatient admissions as medically reasonable and necessary when they were not
10  and covering their tracks by embellishing the records that would later be reviewed to confuse
11  ALJs.  (*See* ECF No. 10-3 at ¶¶ 4, 48, 121–24.)  It is not obvious why favorable rulings are
12  necessarily inconsistent with Plaintiff having engaged in a fraudulent scheme in the manner
13  alleged.  However, assuming that obtaining such rulings were helpful, Plaintiff asserts that Prime
14  affiliates have already "successfully appealed 2,168 of CMS's denials of their claims for 'short
15  stay' inpatient benefits" with a "success rate of appeal" of "nearly 100%."  (ECF No. 13 at 9.)  It
16  is far from apparent why not achieving the $2,169^{th}$ victory will cause their defense to crumble in
17  the FCA Action.

   C.  Hardship or Inequity Resulting from Going Forward without a Stay

19  Defendant's arguments on this subject were underwhelming.  Defendant has not
20  established that going forward would deprive him of any defense in the instant action.  Defendant
21  acknowledges the instant action is a "limited-review administrative record case."  (ECF No. 14 at
22  4.)  Nevertheless, he makes no effort to explain whether this Court could consider the statistical
23  evidence it plans to offer in the FCA Action.  Additionally, he has made no effort to show that the
24  Government would be unable to obtain appropriate relief in the FCA Action if the instant action
25  concluded during the pendency of the FCA Action.

26  With this said, the Court will now turn to whether it would be inequitable to require
27  Defendant to go forward in the instant action with the Settlement Action pending.  If Defendant
28  prevails in the instant case, it would be hard to see how this is so.  If, on the other hand, Plaintiff's

case is strong enough that it must ultimately prevail, it would be disingenuous to suggest that it would be inequitable *to Defendant* to make him go forward before the Settlement Action concludes. Settlement of a civil action before judgment is a specter that lurks in virtually every case. Perhaps, a court would permit a reasonable delay if parties indicated it would promote fruitful, timely settlement negotiations. However, courts do not typically sit idle in the off chance that the case might settle. Here, the party seeking a stay has not only expressed no willingness to settle the instant action and he is *actively litigating* a separate action to ensure that he does not. Moreover, if Plaintiff succeeds in the instant action during the pendency of the Settlement Action, Plaintiff will have been made to expend the time and expense of litigating the instant action to judgment, along with taking the risk that the judgment would not be in its favor. These are precisely the things a civil litigant seeks to avoid by settling.

### D. Reasonableness of Length of Stay in Relation to the Justification for It

Defendant indicates the FCA Action is scheduled for trial in November 2018. However, he has offered no estimate of how long the trial might take, let alone when it might be finally resolved if the district court's judgment is appealed. The Settlement Action has been transferred to the United States Court of Federal Claims, and that transfer is subject to an appeal pending before the United States Circuit Court for the Federal Circuit. Defendant has offered no estimate for when the Settlement Agreement might finally be resolved. Defendant has not offered a strong justification for a stay, let alone a lengthy one — until no less than November 2018 — of indefinite duration. *See ASUSTek Computer Inc. v. Ricoh Co.*, No. C 07-01942 MHP, 2007 WL 4190689, at *3 (N.D. Cal. Nov. 21, 2007) (noting "a stay pending appeal . . . may result in indefinite delay"). Quite simply, Defendant has not met his burden.

### VI. CONCLUSION

For the foregoing reasons, Defendant's motion to stay is DENIED.

IT IS SO ORDERED.

Dated: July 5, 2017

Troy L. Nunley
United States District Judge

11